FILED
SUPERIOR COURT
OF GUAM

2014 JUN 24 PM 4: 34

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| SHANNON H. PHIBBS,<br><br>Plaintiff,<br><br>v.<br><br>PETER F. PHIBBS,<br><br>Defendant. | DOMESTIC CASE NO. DM 0006-14<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 2nd day of May, 2014, for hearing on the Defendant's Motion to Dismiss. Attorney Ron Moroni represents the Plaintiff in this matter, and Attorney Jeffrey A. Cook represents the Defendant. Without oral argument, the Court took the motion under advisement on the briefings. For the reasons set forth below, the Defendant's Motion to Dismiss is DENIED.

## BACKGROUND

The Plaintiff Shannon H. Phibbs and the Defendant Peter F. Phibbs were married in Denver, Colorado, on April 17, 2005. They have a daughter, Savannah Rae Phibbs, born on August 17, 2004 in Denver, Colorado. At the time of the marriage, the Plaintiff was studying medicine and the Defendant was their daughter's primary caretaker. The Plaintiff's medical school tuition was paid for by the United States Navy, and she has served in the Navy since her

graduation. The parties moved to Guam in 2011 as part of the Plaintiff's service to the Navy. On February 28, 2013, with the aid of Christina D. Oliver, a lawyer and notary in service with the U.S. Navy, the parties executed a Separation Agreement. The Separation Agreement purported to settle certain matters between the parties pending a divorce. These included disposition of property and debts, child custody and support, and maintenance. The Separation Agreement also included a term (hereinafter called the "covenant not to divorce") in which the Plaintiff Shannon H. Phibbs agreed to refrain from filing for divorce until she resigned from the Navy's service. At the time the Agreement was executed, this was projected to be October 2015.

On January 6, 2014, the Plaintiff filed a Complaint for the Dissolution of Marriage. The Defendant made a motion to dismiss the complaint on February 11, arguing that the covenant not to divorce barred the dissolution action. The Plaintiff filed an Opposition to the motion on March 10, arguing that enforcement of the covenant not to divorce was contrary to public policy and also that any damages resulting to the Defendant from the divorce could be adequately compensated with money. The Defendant filed a Reply on March 24.

## DISCUSSION

Paragraph 22 of the parties' Separation Agreement, which contains the covenant not to divorce, reads as follows:

> Separation agreement is for legal/financial protection to the wife while allowing husband to retain certain benefits to include medical insurance. Wife agrees to delay divorce filing until separating from the Navy (projected October 2015) so long as husband remains in good faith standing with current agreement and custody-related issues. Spousal support of $400/month would continue until this time as well, to be renegotiated vs terminated in the setting of a divorce agreement.

Def.'s Ex. A ¶ 22, Feb. 11, 2014.

The Separation Agreement also contains a choice of law clause, choosing Colorado law. It reads as follows: "The law of the State of Colorado will govern the interpretation of this agreement, and the status, ownership, and division of property between the parties wherever either or both of them may from time to time reside." Def.'s Ex. A ¶ 35, Feb. 11, 2014.

The basis for the Defendant's Rule 12(b)(6) motion is the argument that the Plaintiff has contracted away her right to file for divorce until she resigns from service in the U.S. Navy, that such a contractual provision is not void for public policy, and that this Court should enforce it. In order to determine the validity of the covenant not to divorce, the Court first analyzes choice of law to determine which jurisdiction's law to apply.

## I. Choice of Law

The Supreme Court of Guam has not yet squarely addressed Guam's approach to choice of law clauses in marital separation agreements. However, in Banes v. Superior Court (Banes), the Supreme Court implied that the parties' choice of the Commonwealth of the Northern Marianas' law in a prenuptial agreement was valid: "Facing final judgment in Guam while another divorce matter is concurrently proceeding in the CNMI, and the potential for inconsistent interpretations of the CNMI law provided by the choice of law provision in the Prenuptial Agreement are among the problems that David cite as 'irreparable harm.'" Banes v. Superior Court (Banes), 2012 Guam 11 ¶ 15. The Supreme Court agreed with David Banes that the Superior Court lacked personal jurisdiction, and in issuing the requested writ of prohibition did not rule that there could be no inconsistent interpretation of CNMI law because such a choice of law clause was invalid in Guam courts. See Banes, 2012 Guam 11 ¶¶ 56-57.

The Restatement (Second) of Conflict of Laws generally favors upholding explicit choice of law clauses in contracts: "[T]he original Restatement did not acknowledge any power

in the parties to choose the applicable law. The present Chapter recognizes that the parties have such power subject to certain limitations." Restatement (Second) of Conflict of Laws Ch. 8, Introductory Note (1971). Section 187 of the Restatement addresses the validity of contractual choice of law clauses. It begins with: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (1971). Even if the issue could not be resolved by an explicit provision, the chosen law will still be upheld unless either:

> "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Id. § 187(2) (1971).

In determining which law applies to interpret a contract that lacks an effective choice of law clause, the court must look to: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties." Id. § 188(2) (1971).

Here, the particular issue to which the choice of law analysis refers is the same as the question ultimately at issue in the Defendant's motion: whether the covenant not to divorce is enforceable, as the Defendant argues, or whether it is void, as the Plaintiff argues. Contrast Def.'s Reply 5, Mar. 24, 2014, with Pl.'s Opp. 2-4, Mar. 10, 2014. The Restatement's official comment on § 187(1) clarifies that it is a rule enabling the parties to incorporate a jurisdiction's

law by reference into their agreement, but it is not a rule by which a court conducts a choice of law analysis. Restatement (Second) of Conflict of Laws § 187, Comment on Subsection (1) (1971). "Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188." Id.

Even assuming for the moment that the parties could not have determined the particular issue by explicit agreement, their choice of Colorado law may still be valid. Looking to the Restatement § 187(2), the parties' choice of law will be upheld if both prongs (a) and (b) are met. With regard to prong (a), the State of Colorado has a substantial relationship to the parties and there is a reasonable basis for their choice of Colorado law. The parties were married in Denver, Colorado. Pl.'s Compl. 2, Jan. 6, 2014. The parties have a child who was born in Colorado. Def.'s Decl. 1, Apr. 16, 2014. Both parties were at least partly educated in Colorado. Id. 1-2. The Defendant had worked for at least seven years in Colorado. Id. 1. Although the parties have subsequently moved away from Colorado, and the Plaintiff lives in Guam and the Defendant in California, their relationship to Colorado is clearly substantial and their choice of Colorado law is reasonable.

However, with regard to prong (b), the interest of Guam in the contract and in the status of the parties' marriage is now materially greater than is Colorado's interest. The Second Restatement § 187(2)(b) requires the Court apply the § 188(2) factors. Restatement (Second) of Conflict of Laws § 187(2) (1971). The Separation Agreement was contracted and presumably negotiated in Guam, and notarized by a Notary and Counsel of the United States Navy in Guam. See Def.'s Ex. A, Feb. 11, 2014. The Defendant resides in California, and the Plaintiff resides in Guam with the parties' child. Def.'s Decl., Apr. 16, 2014; Pl.'s Compl., Jan. 6, 2014; Def.'s Ex.

A, Feb. 11, 2014. Their marital property and debt and the place of performance of the contract track their current places of residence, Guam and California. None of the five factors point to Colorado being the jurisdiction with the greatest interest in the Separation Agreement and marriage.

Guam is the jurisdiction with the greatest interest, California has the second greatest interest, and the interest of Colorado is limited after years in which the parties resided elsewhere. Under the Second Restatement § 187(2)(b), if the application of Colorado law as chosen by the parties, with regard to the covenant not to divorce, would violate a fundamental policy of Guam, then this Court may not uphold the choice of law clause and may not enforce Colorado law. Restatement (Second) of Conflict of Laws § 187(2) (1971). Thus the Court must, in a somewhat circular analysis, determine the substantive question of what Colorado public policy is regarding covenants not to divorce, and then determine whether the application of Colorado law would violate a fundamental policy of Guam, in order to determine whether or not the plaintiff's choice of Colorado law is valid with regard to the covenant not to divorce.

## II. Colorado Public Policy

The parties dispute whether a covenant not to divorce in a separation agreement is contrary to Colorado public policy. The Plaintiff points to Section 14-2-310(2) of the Colorado Revised Statutes, entitled "Unenforceable Terms," and stating in relevant part: "(2) A term in a premarital or marital agreement is not enforceable to the extent that it:...(d) Penalizes a party for initiating a legal proceeding leading to a court-decreed legal separation or marital dissolution; or (e) violates public policy." Colo. Rev. Stat. § 14-2-310 (2013). The Plaintiff argues that exposing the Plaintiff to a possible claim for damages for the cost of the Defendant's

health insurance is a penalty under the contemplation of this statute, and thus that the covenant not to divorce is contrary to Colorado public policy. Pl.'s Opp. p. 4, Mar. 10, 2014.

In contrast, the Defendant argues that the statute the Plaintiff cites is inapplicable. He points out that the broader statute in which the section is embedded is named the Premarital and Marital Agreements Act, and that this statute does not apply to separation agreements, quoting: "PMAA does not apply to…(b) an agreement between spouses who intend to obtain a marital dissolution or court-decreed separation which resolves their marital rights or obligations and is signed when a proceeding for marital dissolution or court-decreed separation is anticipated or pending." Def.'s Reply pp. 4-5, Mar. 24, 2014 (quoting Colo. Rev. Stat. § 14-2-303(3)(b) (2013)).

Colorado has a pair of statutes, one of which applies to marital agreements, and one to separation agreements. Contrast Uniform Premarital and Marital Agreements Act, Colo. Rev. Stat. § 14-2-301 *et seq.* (2013) (governing premarital and marital agreements), with Uniform Dissolution of Marriage Act, Colo. Rev. Stat. § 14-10-112 (2013) (governing separation agreements). A marital agreement is not to be enforced if it penalizes a party for seeking dissolution or is contrary to public policy. See Colo. Rev. Stat. § 14-2-310 (2013). A separation agreement may be enforced if it is enacted for the purposes permitted by the statute and is not unconscionable. See Colo. Rev. Stat. § 14-10-112 (2013). Determining which statute to apply thus requires a determination of whether Colorado courts would regard the agreement between the parties as a marital agreement or a separation agreement.

Colorado regards separation agreements as requiring closer scrutiny by courts than premarital or marital agreements do, and requires that marital agreements be signed prior to the filing of a dissolution action, based on a public policy concern to safeguard the interests of

spouses involved in the emotionally stressful circumstances of a dissolution action. See In re Marriage of Manzo, 659 P.3d 669, X (Colo. 1983); see also In re Marriage of Lafaye, 89 P.3d 455, 458 (Colo. App. 2003). In the case at bar, the agreement was executed in February 2013, well in advance of the dissolution filing in January 2014.

However, Colorado courts do not always merely compare the timing of the agreement with the timing of the dissolution petition to determine whether a particular agreement is a marital agreement or a separation agreement. In Matter of C.G.G., two Swedish residents of Colorado entered into a child support agreement eight days before filing for a marital dissolution in Sweden. Matter of C.G.G., 946 P.2d 603, 606 (Colo. App. 1997). The Colorado Court of Appeals upheld the trial court's ruling that regarded the agreement as a marital agreement and interpreted it accordingly. See Matter of C.G.G., 946 P.2d at 606. In contrast, in In re Marriage of Bisque, the agreement in question was signed one day before the parties mailed the papers for a mail-order Mexican divorce. In re Marriage of Bisque, 31 P.3d 175, 176 (Colo. App. 2001). Holding that the case was distinguishable from Matter of C.G.G., the appellate court in In re Matter of Bisque affirmed the trial court's ruling that the agreement was "attendant upon" a dissolution and in contemplation of the dissolution of the marriage, and thus even though the agreement preceded that divorce filing, the agreement was a separation agreement rather than a marital agreement. Marriage of Bisque, 31 P.3d at 179.

In the instant case, the agreement between the Plaintiff and Defendant is called a "Separation Agreement." Def.'s Ex. A, Feb. 11, 2014. The agreement is atypical in that neither had a dissolution action commenced nor was one imminent, instead the parties agreed that the Plaintiff would delay filing divorce until retiring from the Navy, which was projected to occur in October 2015. Id. at ¶ 22. However, the parties did contemplate that a future judicial decree

of divorce would eventually be necessary to settle their affairs. See id. at ¶ 3. Considering the circumstances of the agreement in light of Colorado's statutes and case law, it appears that Colorado courts would regard this agreement as a separation agreement, not as a marital agreement.

Colorado's Uniform Dissolution of Marriage Act, part of which addresses separation agreements, contains instructions to courts to liberally construe the statute to promote its underlying purposes, which are: "(a) To promote the amicable settlement of disputes that have arisen between parties to a marriage; (b) To mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage; and (c) To make the law of legal dissolution of marriage more effective for dealing with the realities of matrimonial experience by making an irretrievable breakdown of the marriage relationship the sole basis for its dissolution." Colo. Rev. Stat. § 14-10-102 (2013).

More specifically, the statute's provision for separation agreements states:

> To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the allocation of parental responsibilities, support, and parenting time of their children.

Colo. Rev. Stat. § 14-10-112(1) (2013).

The Colorado Supreme Court has interpreted the purpose of the provision thus: "Separation agreements, on the other hand, are designed to enable divorcing parties to reach an amicable out-of-court settlement of their claims to the property of the other as affected by the marriage relationship and the circumstances then existing." Newman v. Newman, 653 P.2d 728, 733 (Colo. 1982).

The statute explicitly states that a Colorado trial court is not bound to accept a separation agreement's terms "providing for the allocation of parental responsibilities, support, and parenting time of children." Colo Rev. Stat. § 14-10-112(2) (2013). In contrast, it does not explicitly state that a court is not bound to accept provisions in a separation agreement that prohibit filing for divorce. But such statements exceed what parties are permitted to contract to under the statute, which in relevant part reads: "the parties may enter into a written separation agreement containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the allocation of parental responsibilities, support, and parenting time of their children." Colo Rev. Stat. § 14-10-112(1) (2013). What the parties in the current case have attempted to do in paragraph 22 of their Separation Agreement, include a covenant not to divorce, is in contradiction with the purposes of the statute. Under a statutory provision allowing for agreements regarding maintenance, property, and children to *facilitate* a separation or divorce, the agreement attempts to *prevent* Shannon Phibbs from filing for divorce. Thus the parties went beyond the scope permitted by the statute in making an agreement that impacts marital status. The enforcement of such a covenant not to divorce would not further the statute's purposes. Instead it would lessen the prospect of the amicable settlement of the parties' disputes, increase the chance of potential harm to the spouses and their child, and make the law less, not more, effective in dealing with the realities of matrimonial experience.

In their agreement, the parties attempted to use a statutory provision that enables amicable settlement of property disputes upon marital separation or dissolution, to address marital status as well as property, and to prevent marital dissolution at least so long as the Plaintiff continues her service in the United States Navy. Although the Defendant's apparent

interest is not to restrain his wife's rights merely for its own sake, but is instead to retain his access to Navy health insurance and other Navy spousal benefits, the means by which he attempted to do so are contrary to Colorado public policy.

**III. Guam Public Policy**

As determined above, Colorado law does not permit Colorado courts to enforce a covenant not to divorce in a separation agreement. This Court will uphold the parties' choice of law unless application of the chosen law would violate a fundamental policy of Guam. See Restatement (Second) of Conflict of Laws § 187(2)(b) (1971). If it is a fundamental policy of Guam to enforce covenants not to divorce in separation agreements, then Colorado law may not be applied.

However, Guam does not have a fundamental public policy that would be violated by an application of Colorado law. In fact, Guam public policy is in accord with Colorado in this circumstance. In Speicher v. Speicher, a case about jurisdiction to adjudicate a divorce, the Supreme Court wrote the following:

> The dissolution of a marriage, which the law has found to be unworkable and injurious to the public, 'is not dependent upon final settlement of property disputes.' Without [divisible divorce], marital property disputes, real or baseless, 'could continue for years, effectively preventing the legal establishment of any other relationship by either party.' As such, one spouse is prevented from postponing indefinitely the dissolution of a marriage by prolonging proceedings that primarily involve financial responsibility and division of marital property.

Speicher v. Speicher, 2013 Guam 11 ¶ 18 (citations omitted).

Guam has a strong public policy interest in the marital status of persons domiciled on Guam, of which Shannon Phibbs is one. See Speicher v. Speicher, 2013 Guam 11 ¶ 18. "The public interest is not enhanced by refusing people the right to legally terminate a relationship which has already been irrevocably severed in fact." Id. (citation omitted). Instead, "the power

to prevent a final distribution should be used only when necessary to preserve the authority of the court." Id.

The present case does not present any of the jurisdictional questions that led the Supreme Court to remand in Speicher. See id. at ¶¶ 9, 10-15, 16-23 (discussing personal jurisdiction, forum non conveniens, divisible divorce, and comity, and reversing and remanding the case). The defendant moves to dismiss on the basis of the separation agreement, but does not argue that the Court lacks jurisdiction over him, nor that a jurisdiction besides Guam would provide a superior forum to Guam. Def.'s Mot., Feb. 11, 2014. Thus there are no questions about "the authority of the court" as were present in Speicher. Contrast Speicher v. Speicher, 2013 Guam 11 ¶ 18.

In contrast, the Supreme Court's policy concerns about requiring a factually severed marriage to legally continue, which motivated the reversal and remand in Speicher, are also present here. The agreement acknowledges that the marital relationship is irrevocably severed in fact as the agreement contemplates a final decree of divorce being issued in the future. Def.'s Ex. A ¶ 3, Feb. 11, 2014. The purpose of the covenant not to divorce in the separation agreement is to allow Peter Phibbs to retain benefits including Navy health insurance. Id. at ¶ 22. The defendant vigorously argues in favor of him being allowed to maintain the many benefits of having a spouse in the Navy. Def.'s Reply pp. 1-2, Mar. 24, 2014; Def.'s Decl. p. 4, Mar. 24, 2014; Def.'s Ex. A, Mar. 24, 2014. The attempt by the Defendant to dismiss this case on the basis of the separation agreement is precisely an attempt to "postpone[e] indefinitely the dissolution of a marriage," where his object primarily concerns "matters of financial responsibility and division of marital property," in this case including spousal access to Navy employee benefits. Compare Speicher v. Speicher, 2013 Guam 11 ¶ 18.

No fundamental public policy of Guam would be frustrated by the Court's enforcement of the parties' choice of Colorado law, as Colorado law does not enable covenants not to divorce, and Guam public policy is in accord.

## IV. Dismissal as Similar to Specific Performance

The Defendant's pleading is titled "Motion to Dismiss Complaint for Dissolution of Marriage." Def.'s Mot., Feb. 11, 2014. The Defendant makes the motion under Guam Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Def.'s Mot., Feb. 11, 2014 The reason the Defendant argues relief cannot be granted to the Plaintiff is the covenant not to divorce in paragraph 22 of the Separation Agreement, which in relevant part states, "Wife agrees to delay divorce filing until separating from the Navy (projected October 2015) so long as husband remains in good faith standing with current agreement and custody-related issues." Def.'s Ex. A, Feb. 11, 2014. In other words, the Defendant seeks dismissal because he argues the Plaintiff has contracted away her right to get divorced.

As ruled above, the covenant not to divorce is contrary to public policy under both the parties' chosen Colorado law and Guam law. But even if the clause had been valid, that does not necessarily mean that dismissal would be the proper remedy. The Defendant requests that the Court hold the Plaintiff to the agreement and prohibit conduct contrary to the agreement, disallowing her from getting divorced while remaining in the Navy's service. Such a dismissal, as the Court's response to an alleged breach of a separation agreement, is conceptually akin to the equitable remedy of specific enforcement for a breach of contract.

Guam courts, and equity jurisprudence generally, require the absence of an adequate remedy at law and proof of irreparable injury before issuing an equitable remedy to cure a

breach of contract.[1] See Mack v. Davis, 2013 Guam 8 ¶ 12 (holding that preliminary injunctions are a drastic remedy that require proof of irreparable injury); see also 27 Am Jur. 2d. Equity § 30 (1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. Equity jurisdiction is therefore generally excluded if there is an adequate remedy at law.") In seeking to dismiss the Plaintiff's petition for dissolution of marriage, the Defendant argues that the loss of the benefits he receives as a Navy spouse, including medical insurance, access to base facilities and programs, access to Navy Exchange stores, and many other benefits, cannot be adequately compensated with money damages. Def.'s Reply 2, Mar. 24, 2014; see Def.'s Ex. A, Mar. 24, 2014.

The Court does not need to agree with the Plaintiff's argument that "the only purpose of the [covenant not to divorce] was to enable the Defendant to take advantage of military medical benefits" to find the use of an equitable remedy to be unwarranted. See Pl.'s Opp. 5, Mar. 10, 2014. The Defendant argues that the numerosity, uniqueness, and diversity of the benefits available to a Navy spouse means that they cannot be compensated with damages. Def.'s Reply 2, Mar, 24, 2014. While it is true that the Navy makes many benefits available to the spouses of its personnel, the benefits the Defendant has brought to the Court's attention are largely in the nature of subsidized or free goods or services, and these goods and services have comparable civilian substitutes which are available for purchase with money. See Def.'s Reply 2, Mar, 24, 2014; see also Def.'s Ex. A, Mar. 24, 2014. The Defendant does not mention any particular benefit of vital interest to him that is unique the way the law presumes real property is unique. See 20 GCA § 3222 (2013) (presuming that breach of an agreement to transfer real property

---

[1] Neither the action generally nor the specific motion being adjudicated is one of breach of contract, and contract remedies principles are discussed for purposes of analogy.

cannot be adequately relieved by pecuniary compensation, but that breach of an agreement to transfer personal property can be adequately relieved by pecuniary compensation); see also Dan B. Dobbs, Remedies § 12.10 (1973). The complexity of placing a dollar value on the benefits that the Defendant would have to forego upon a decree of divorce may make the required fact-finding intricate, but it does not make money damages inadequate.

The Court finds that any damages that may result to the Defendant upon a decree of divorce are capable of remedy by pecuniary compensation and on that basis concludes that dismissal of the Plaintiff's dissolution of marriage action is not warranted.

## CONCLUSION

For the reasons set forth above, the Court finds that the Separation Agreement's covenant not to divorce is contrary to both Guam public policy and Colorado law, which was selected by the parties. The Court likewise finds that any damages that may be suffered by the Defendant due to this divorce action may be remedied with money. The Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED this day of ___JUN 2 4 2014_____.

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of
R. Morони
J. Cook; PMR
Date: 6/24/14 Time: 4:40
Deputy Clerk, Superior Court of Guam